Campbell 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00026-CV







R. L. Campbell, Appellant



v.



A. J. Sneed and Alvin Sneed, Individually and on Behalf of Jordon Lofton Heirs;


Robert Whitsey; Annie Whitsey; Charlie Whitsey; Emanuel Whitsey; 


and Curtis McGregor Whitsey, Appellees







FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT


NO. 18,977, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING








 Appellees, Jordon Lofton's heirs, claim an undivided interest in 176.25 acres of
land located in Bastrop County. They brought this trespass to try title suit challenging
appellant R.L. Campbell's interest in the land. After a bench trial, the district court ruled for
the heirs. Campbell appeals the district court's judgment. He claims that the trial court
abused its discretion by allowing A.J. Sneed to maintain a trespass to try title action on behalf
of the Lofton heirs. He also argues that there is insufficient evidence to support several of the
district court's findings of fact. We will affirm.



BACKGROUND


 This case involves a dispute over 234 acres of land ("the Lofton estate") in
Bastrop County originally purchased by Jordon Lofton in the 1880s. Lofton purchased 224
acres in Bastrop County in 1881. Two years later, he purchased an additional ten acres. Lofton
died intestate and was survived by twelve children. Thus, each of his children inherited an
undivided one-twelfth interest in the entire 234 acres.

 One of Lofton's children, Georgie Allen, lived on the Lofton estate. In 1946,
some of the Lofton heirs decided to convey their interest in the estate to Allen. To do so,
these heirs drafted a deed ("the 1946 deed") that identified twenty-five individuals as "the only
heirs of law of Jordan [sic] Lofton . . . and [the] only persons having interest in his estate." 
The deed purported to convey three and one half shares out of the twelve shares in the Lofton
estate to Allen. (1) The 1946 deed also attempted to partition Georgie Allen's interest in the
Lofton estate from the interests of the remaining Lofton heirs. The deed specified the metes
and bounds of the property allocated to Allen. Although the deed named twenty-five
individuals as Lofton's heirs, only eleven signed it. (2) If the 1946 deed was effective as a
conveyance, it gave Allen an undivided 7/24 interest in the Lofton estate. If it was also
effective as a partition, it gave her sole ownership of approximately 57.75 acres and divested
her of any interest in the remaining 176.25 acres.

 Georgie Allen's sole heir was her daughter, Henrietta Brown. Henrietta died
intestate and was survived by eight children. Three of these children, Mary Whitsey, Eula
Mae Breedlove, and Roberta Brown ("the grantors"), each sold their interest in the Lofton
estate to R.L. Campbell in 1986 and 1987. The three deeds of sale mirror one another in their
description of the land conveyed to Campbell. (3)

 After Campbell purchased these three interests, he moved a trailer and some
cattle onto the land. This dispute arose after Campbell began clearing some of the land for the
purpose of grazing cattle. Campbell claimed that he possessed an undivided interest in the
entire 234-acre Lofton estate and allowed his cattle to roam freely. (4)

 Appellee, A.J. Sneed, Lofton's grandson, initiated this trespass to try title suit
on behalf of himself and the other Lofton heirs. Sneed was born on the Lofton estate and has
lived there all of his life. Appellees Robert Whitsey, Annie Whitsey, and Charlie Whitsey,
children of Henrietta Brown, intervened in the lawsuit. They agreed with Sneed that the 1946
deed partitioned the 57.75 acres from the rest of the Lofton estate and asked the district court
to partition their 5/8 interest in the 57.75 acre tract from Campbell's 3/8 interest.

 Appellees disputed Campbell's claim to an undivided interest in the entire
Lofton estate. They argued that Campbell could not have a greater interest in the property
than his grantors had at the time of sale. Appellees contended that the 1946 deed was effective
as a partition of the 57.75 acres from the rest of the Lofton estate and that Campbell had an
interest only in those 57.75 acres. They claimed that Campbell was a trespasser as to the
remaining 176.25 acres in the Lofton estate because he had no title to that tract.

 Campbell responded that he owned an undivided interest in the entire estate and
that he had the right to use the land as a tenant in common. He argued that the trespass to try
title action brought against him was inappropriate because a tenant in common cannot be a
trespasser.

 The district court found that the 1946 deed was an effective partition of the
Lofton estate because: (1) the 1946 deed was clearly intended to partition 57.75 acres to
Georgie Allen; and (2) the Lofton heirs have recognized the 1946 deed as a legitimate
conveyance and partition of 57.75 acres to Georgie Allen. Additionally, the court found that
Sneed satisfied the criteria required to prevail in a trespass to try title lawsuit. (5) See Dahlberg
v. Holden, 238 S.W.2d 699, 702-04 (Tex. 1951); Permian Oil Co. v. Smith, 73 S.W.2d 490,
497 (Tex. 1934). Finally, the court found that Campbell purchased a 3/8 undivided interest in
the 57.75 acres.

 The trial court ordered that Sneed and the Lofton heirs recover title and
possession of the 176.25 acres from Campbell. Additionally, it ordered that the 57.75 acres
be partitioned between the intervenors' 5/8 interest and Campbell's 3/8 interest. Campbell
challenges the judgment of the trial court in twelve points of error.



DISCUSSION


1.  Abuse of Discretion.

 In his first, second, and fifth points of error, Campbell argues that the trial
court abused its discretion by denying his plea in abatement and cross-motion to show
authority, and by hearing this trespass to try title suit. He contends that one cotenant may not
legally bring a trespass to try title suit against another cotenant unless all remaining cotenants
are joined. We find Campbell's argument unconvincing given the nature of this lawsuit.

 In order to successfully challenge a district-court order that is within the judge's
discretionary power, an appellant must show that the order "is a 'clear abuse of discretion.'" 
Lutheran Social Serv., Inc v. Meyers, 460 S.W.2d 887, 889 (Tex. 1970). A court of appeals
may not reverse a trial court for abuse of discretion unless the trial court's decision was
clearly arbitrary and unreasonable. Simon v. York Crane & Rigging Co., Inc., 739 S.W.2d
793, 795 (Tex. 1987). To determine whether the district court abused its discretion, we must
consider the whole record on appeal. Id.; Donley v. Hunter, 426 S.W.2d 250, 252 (Tex. Civ.
App.--Houston [1st Dist.] 1968, no writ). 

 In a trespass to try title action among cotenants, joinder of other cotenants is
unnecessary when the plaintiff seeks only admittance to joint possession of the property. 
Wood v. Gulf Prod. Co., 100 S.W.2d 412, 417 (Tex. Civ. App.--Texarkana 1936, no writ); 61
Tex. Jur. 3d Quieting Title and Determining Adverse Claims § 114, at 604 (1988). Joinder of
all cotenants becomes necessary if the plaintiff seeks partition rather than admittance to the
property. 61 Tex. Jur. 3d Quieting Title and Determining Adverse Claims § 114, at 604. 
However, one cotenant may bring a trespass to try title action against a trespasser without
joining all other cotenants. Taylor v. Catalon, 166 S.W.2d 102, 105 (Tex. 1942); Hicks v.
Southwestern Settlement & Dev. Corp., 188 S.W.2d 915, 918 (Tex. Civ. App.--Beaumont
1945, writ ref'd w.o.m.). (6)

 In this case, appellees assert that Campbell was a trespasser to the 176.25 acres
of the Lofton estate that were not given to Georgie Allen in 1946. In order to determine
whether Campbell was a trespasser, the trial court did not need to join all of the heirs. Thus,
the trial court did not abuse its discretion. Campbell's first, second, and fifth points of error
are overruled.



2.  Sufficiency of the Evidence.

 In his remaining nine points of error, Campbell attacks the sufficiency of the
evidence supporting several of the trial court's findings of facts. We attach to findings of fact
the same weight that we attach to a jury's verdict upon jury questions. City of Clute v. City of
Lake Jackson, 559 S.W.2d 391, 395 (Tex. Civ. App.--Houston [14th Dist.] 1977, writ ref'd
n.r.e.). Findings of fact are reviewable for legal and factual sufficiency of the evidence by the
same standards used to review jury findings. Okon v. Levy, 612 S.W.2d 938, 941 (Tex. Civ.
App.--Dallas 1981, writ ref'd n.r.e.) (citing Hall v. Villarreal Dev. Corp., 522 S.W.2d 195
(Tex. 1975)). An appellant who challenges the legal sufficiency of the evidence supporting an
issue upon which it did not have the burden of proof must demonstrate that there is no
evidence to support the adverse finding. Raw Hide Oil & Gas, Inc. v. Maxus Exploration
Co., 766 S.W.2d 264, 275-76 (Tex. App.--Amarillo 1988, writ denied). In reviewing a no-evidence point, we consider only the evidence supporting the finding and disregard all
evidence to the contrary. Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). 
If there is any evidence supporting the finding, we must overrule the point and uphold the
finding.

 When challenging the factual sufficiency of the evidence supporting an adverse
finding upon which it did not carry the burden of proof, an appellant must demonstrate that
there is insufficient evidence to support the adverse finding. Maxus Exploration Co., 766
S.W.2d at 276. We will consider and weigh all the evidence in support of and contrary to the
finding. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). The contested
finding will be upheld unless we find that (1) the evidence is too weak to support the finding,
or (2) the finding is so against the overwhelming weight of the evidence as to be manifestly
unjust. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We may not substitute our
judgment for that of the trier of fact merely because we reach a different conclusion. Otis
Elevator Co. v. Joseph, 749 S.W.2d 920, 923 (Tex. App.--Houston [1st Dist.] 1988, no writ). 

 In his third, fourth, seventh, tenth, eleventh, and twelfth points of error,
Campbell challenges the sufficiency of the evidence to support the trial court's finding that the
1946 deed partitioned the Lofton estate. The language of the 1946 deed indicates that its
drafters intended it to serve two functions: first, to convey 3.5 of the 12 shares in the Lofton
estate to Georgie Allen; and second, to partition Georgie Allen's interest in the Lofton estate
from the remaining heirs' interests. To rule on Campbell's points of error, we need only
consider the second function.

 A partition of land dissolves a tenancy in common. Houston Oil Co. v.
Kirkindall, 145 S.W.2d 1074, 1077 (Tex. 1941). While a partition affects the right to
possession and use of land, it does not convey title upon any of the cotenants. Id.; Dierschke
v. Central Nat'l Branch of First Nat'l Bank, 876 S.W.2d 377, 379 (Tex. App.--Austin 1994, no
writ); see also Tex. Prop. Code Ann. § 23.004(c) (West 1984) ("[A] partition of real property
does not affect a right in the property."). As a result, voluntary partition agreements are not
subject to the same formality requirements as conveyances of real property. See Houston Oil
Co., 145 S.W.2d at 1077 (noting that, because partition agreements are "not within the
purview of the Statute of Frauds," parol partition agreements are effective); 57 Tex. Jur. 3d
Partition § 6, at 238 (1987) ("Instruments whereby property is partitioned need not be
acknowledged, recorded, or witnessed."). Still, partition agreements are "binding contracts
and are subject to the usual rules of construction to determine their scope and application." 
Garza v. De Montalvo, 217 S.W.2d 988, 993 (Tex. 1949). 

 An attempted voluntary partition that is not binding on all cotenants is invalid. 
Joyner v. Christian, 113 S.W.2d 1229, 1232 (Tex. 1938); see Dierschke, 876 S.W.2d at 380. 
However, even if a partition agreement is invalid because some cotenants are not bound, the
partition is valid as to those cotenants who participated in the agreement. Republic Prod. Co.
v. Lee, 121 S.W.2d 973, 979 (Tex. 1938); 57 Tex. Jur. 3d Partition § 9, at 243. Cotenants
who have accepted part of the land as their share or who have ratified the partition agreement
are estopped from attacking the agreement. Joyner, 113 S.W.2d at 1232; see also 57 Tex.
Jur. 3d Partition § 9, at 243 (noting that ratifiers and their successors in title are estopped
from attacking the partition).

 Campbell contends that the 1946 deed was ineffective as a partition because not
all of the Lofton heirs participated in it. To support this contention, he points out that only
eleven of the twenty-three heirs named in the deed signed it. As noted above, not all cotenants
need sign the partition instrument. It is only necessary that all of the cotenants ratify the
partition agreement. The record contains explicit and implicit evidence that the Lofton heirs
ratified the voluntary partition of 57.75 acres from the remainder of the Lofton estate. The
plain language of the 1946 deed evinces an intention to partition the land. This deed specifies
the metes and bounds of the land to be partitioned. For over forty years, this deed remained
unchallenged. From this evidence, we can infer that the Lofton heirs acquiesced in the
partition. See Robinson v. O'Connor, 181 S.W.2d 935, 939 (Tex. Civ. App.--El Paso 1944,
writ ref'd w.o.m.) (noting that an "ancient" voluntary partition agreement "may be shown by
circumstances and inferences from the acts of the parties and their acquiescence in such acts").

 Additionally, if Georgie Allen ratified the partition agreement, she would have
been estopped from challenging its validity. A.J. Sneed testified that Georgie Allen purchased
3.5 shares of the Lofton estate and lived on the property. The 1946 deed gave Georgie Allen
a greater interest in the property than she had without the deed. We find this evidence
sufficient to conclude that Georgie Allen accepted 57.75 acres as her increased share of the
Lofton estate. Since Campbell's interest in the Lofton estate is derived solely from Georgie
Allen's interest, he too is precluded from challenging the validity of that agreement. Joyner,
113 S.W.2d at 1232; 57 Tex. Jur. 3d Partition § 9, at 243.

 Even if the Lofton heirs had not ratified the 1946 deed, Campbell would be
estopped from challenging the validity of the partition agreement. Campbell received his
interest in the Lofton estate through deeds of sale from Mary Whitsey, Eula Mae Breedlove,
and Roberta Brown. Each of these three deeds explicitly references the 1946 deed. In fact,
they convey to Campbell the same interest that the 1946 deed conveyed to Georgie Allen. 
Campbell drafted these deeds. By accepting them, he ratified the 1946 agreement and is
estopped from challenging the partition. (7) We conclude that the evidence is legally and
factually sufficient to support the trial court's finding that the partition deed was valid and
effective. Campbell's third, fourth, seventh, tenth, eleventh, and twelfth points of error are
overruled.

 In his sixth and eighth points of error, Campbell argues that there is insufficient
evidence to support the trial court's finding that appellees established the identity or location of
the 234 acres comprising the Lofton estate. In a trespass to try title action, the plaintiffs have
the burden of identifying the property they claim and of establishing the location of that
property. Permian Oil Co., 73 S.W.2d at 497; 61 Tex. Jur. 3d Quieting Title and
Determining Adverse Claims § 168, at 686-87. The identification must be sufficient to ensure
that "an officer seeking to enforce a writ of possession under a judgment in [the plaintiff's]
favor could locate" and restore the plaintiff's possession of the property without "being
required to exercise judicial functions." Permian Oil Co., 73 S.W.2d at 497. A description
of land in the petition calling for stakes and mounds is sufficient to identify the property. Id.
at 500-01. Additionally, "[a] description in a deed is sufficient if it indicates the land
conveyed thereby so that one familiar with the locality can identify the land with reasonable
certainty." Scott v. Washburn, 324 S.W.2d 957, 960 (Tex. Civ. App.--Waco 1959, writ ref'd
n.r.e.). A copy of a surveyor's map can also be sufficient to identify the property. See
Ramirez v. Wood, 577 S.W.2d 278, 282 (Tex. Civ. App.--Corpus Christi 1978, no writ)
(holding certified copy of surveyor's map sufficient because it located tract in question in
relation to surrounding tracts and cross-referenced document containing metes and bounds
description of tract).

 The record contains evidence of the location and identity of the Lofton estate. 
In their first amended petition, appellees reference and incorporate the two deeds that
conveyed the 234 acres to Jordon Lofton. Both of these deeds were admitted into evidence at
trial. The deeds adequately describe the identity and location of the land conveyed to Lofton. 
The first deed uses stakes and other readily identifiable landmarks to describe 224 acres of the
Lofton estate. The second deed references previous deeds on file in Bastrop County to
describe ten additional acres of the Lofton estate. Also in evidence is an aerial photograph of
the Lofton estate and the land surrounding it. Each tract of land, including the Lofton estate,
is marked on the photograph. Additionally, A.J. Sneed testified at trial that the entire 234
acres had been fenced before Campbell ever came on the property. 

 There is also evidence to identify and locate the portion of the Lofton estate
partitioned to Georgie Allen. The 1946 deed, which was entered in evidence at trial, uses
stakes and other artificial landmarks to describe the metes and bounds of Allen's 57.75 acres. 
Also in evidence is a 1993 survey of Allen's portion of the Lofton estate. The survey, which
references the 1946 deed, identifies the location of Allen's property with respect to the
property surrounding it. (8)

 The evidence presented at trial showing the identity and location of the Lofton
estate and Georgie Allen's portion of the Lofton estate is sufficient to support the trial court's
finding that appellees established the identity and location of the property in dispute. 
Campbell's sixth and eighth points of error are overruled.

 In his ninth point of error, Campbell contends that there is insufficient evidence
to establish appellees' chain of title to the Lofton estate. In a trespass to try title action,
cotenants seeking to recover exclusive possession of real property must prove two things: (1)
their own title to an undivided interest and (2) that the defendant is a trespasser to the entire
interest. Dahlberg, 238 S.W.2d at 702. Cotenants can prove their own title "(1) [by] proving
a regular chain of conveyances from the sovereign, (2) by proving a superior title out of a
common source, (3) by proving title by limitations, or (4) by proving prior possession, and
that the possession had not been abandoned." Land v. Turner, 377 S.W.2d 181, 183 (Tex.
1964).

 Campbell argues that there is insufficient evidence to establish a chain of title
because appellees failed to connect their title and his title to a common source and failed to
prove the superiority of their own claim to the land. As noted above, this is only one of
several ways in which appellees could have established their right to exclusive possession of
the Lofton estate. Record evidence supports the finding that appellees have had a regular
chain of title to the property from a common source since 1883. The deeds of sale giving
possession of the 234 acres to Jordon Lofton in 1881 and 1883 are in evidence. These deeds
are the common source. A.J. Sneed testified at trial that his mother Katy Lofton Sneed was
born and lived on the Lofton estate until she died. He further testified that he was born on the
estate and has lived on the estate his entire life. (9) There is also sufficient evidence connecting
Campbell's title to the same source. Campbell is attempting to claim an undivided interest in
the entire Lofton estate because he purchased the interests of three of Jordon Lofton's great
grandchildren. Thus, Campbell derives his title from the same two deeds as appellees. As
noted above, evidence sufficiently establishes that Campbell is a trespasser to the 176.25 acres
that were not part of Georgie Allen's portion of the Lofton estate.

 Additionally, there was sufficient evidence in the record for the trial court to
find that appellees proved their title through prior possession of the land. A.J. Sneed testified
that he has lived on the Lofton estate for his entire life. He testified that he has never left the
property. He also testified that his predecessors in interest lived and died on the land. This
testimony is sufficient to support a finding of prior possession without abandonment. We
overrule Campbell's ninth point of error.

CONCLUSION


 We conclude that the record contains sufficient evidence to support the trial
court's findings that: (1) the 1946 deed was effective as a partition of the Lofton estate; (2)
appellees proved the identity and location of the Lofton estate; and (3) appellees proved that
they have had a regular chain of title to the Lofton estate from a common source. We also
find that the trial court did not abuse its discretion by overruling Campbell's plea in abatement
and cross-motion to show authority. The judgment of the district court is affirmed.



 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: July 12, 1995

Do Not Publish

1. [1]  Testimony at trial indicated that Allen purchased the interest of three of her brothers
(Cefias, Frank, and Isiah Lofton) and the interest of a nephew (Theodore Hill). Both the deed
and the testimony indicate that the deed intended to convey three and one half shares of the
Lofton estate to Allen.
2. [2]  Georgie Allen did not sign the 1946 deed.
3.   The deeds each describe four tracts of land. The second and third tracts of land
described in the deed comprise the 57.75 acres conveyed to Georgie Allen in the 1946
deed. The fourth tract refers to a deed that gave Georgie Allen an undivided interest in
the entire 234 acres; however, this deed was made before 1946. The 1946 deed clearly
states that Georgie Allen accepted the 57.75 acres as her only interest in the Lofton estate. 
The first tract references another deed that was made before 1946. It is unclear if this deed
also gave Georgie Allen an interest in the 234 acres. If it did, however, the 1946 deed
supersedes this deed as well.
4.   At oral argument, appellees admitted that, while the entire 234 acre Lofton
estate had been surrounded by a fence as long as anyone could remember, the 57.75 acres
had not been fenced until after this lawsuit was filed.
5.   The court found that Sneed and the heirs he represented proved the identity of
the land he claimed title to (the 176.25 acre tract), that he had title to that 176.25 acres,
and that Campbell had no title to that same 176.25 acres.
6.   Campbell concedes that a single cotenant can bring a trespass to try title action
against a trespasser.
7.   Campbell is bound by the 1946 deed. "It is well settled that `a purchaser is
bound by every recital, reference and reservation contained in or fairly disclosed by any
instrument which forms an essential link in the chain of title under which he claims.'" 
Westland Oil Dev. Corp. v. Gulf Oil Corp., 637 S.W.2d 903, 908 (Tex. 1982) (quoting
Wessels v. Rio Bravo Oil Co., 250 S.W.2d 668, 670 (Tex. Civ. App.--Eastland 1952, writ
ref'd)). 
8.   The survey shows that Georgie Allen's portion of the Lofton estate is actually
58.487 acres.
9.   Katy Lofton Sneed inherited an undivided 1/12 interest in the property upon the
death of her father, Jordon Lofton. A.J. Sneed inherited a portion of Katy Sneed's
interest upon her death.